(135 So. 11)

**HUDSON v. MURRAY et al.**
No. 30709.

April 27, 1931.

Rehearing Denied May 25, 1931.

Cook & Cook, of Shreveport, for appellants.

L. Percy Garrot, of Shreveport, for appellee.

### LAND, J.

The defendant' John E. ·Murray, with the consent of his codefendant, Samuel Chatwin, purchased for the price of $12,000 a mortgage note for $15,000, with interest and attorney's fees, executed by Chatwin, and held by the City Savings Bank & Trust Company of Shreveport, La., as collateral for a debt of $13,000 due by Chatwin to the bank.

The mortgage securing this note covered lots 1, 2, and 3 and parts of lots 9, 10, and 11 of Block 22 of the J. N. Howell subdivision of the city of Shreveport, La.

On September 21, 1929, this mortgage was foreclosed by Murray, with the consent of his codefendant, Chatwin, and the above-described property was purchased by Murray at sheriff's sale for the price of $1,000.

The petitioner, L. D. Hudson, is the assignee of Mrs. D. A. Lee, of a judgment obtained by her on September 22, 1928, for $6,-500, with interest and attorney's fees. This

judgment was recorded in the mortgage records of Caddo Parish, and the judicial mortgage resulting therefrom was inferior in rank to the mortgage securing the note purchased by Murray and foreclosed by him.

Petitioner alleges that an agreement was made by and between Samuel Chatwin and John E. Murray, defendants, by virtue of which it was agreed that Murray would purchase at sheriff's sale the property mortgaged to secure the payment of the note and mortgage for $15,000.

That the agreement further provided that Murray would have, for the price of $25,000, lot 12 of block 22 of the J. N. Howell subdivision, and lots 9, 10, and 11 of this block, less that part of the lots sold to the Standard Oil Company of Louisiana.

That, after the sale of the property, Murray would transfer to Chatwin, or to any one designated by him, and "for no additional consideration," lots 1, 2, and 3 of block 22 of the J. N. Howell subdivision.

That the note for $15,000 interest and attorney's fees amounted, at the time the above agreement was entered into, approximately to $24,000, that the property mortgaged to secure the note was not worth $24,000, and that this fact assured the parties that no one would offer to pay a higher amount than $24,-000.

That the amount paid by Murray to the City Savings Bank & Trust Company was part of the purchase price of $25,000, and that the above agreement was a scheme to place lots 1, 2, and 3 of block 22 of the J. N. Howell subdivision "beyond the reach of the judgment creditors of Chatwin," that, in reality, the lots are the property of Chatwin, and that the sale of these lots at sheriff's sale was a simulation.

Petitioner then asks for judgment holding that the sale was simulated; that the above

lots, therefore, belong to and are the property of Chatwin, and are unincumbered by the mortgage for $15,000; that this property is subject to the judicial mortgage of petitioner, and to execution under the judgment assigned to him by Mrs. Lee.

Judgment was rendered in favor of petitioner, L. D. Hudson, and against defendants as follows:

First. Decreeing lots 1, 2, and 3 of block 22 of the J. N. Howell subdivision of the city of Shreveport to be the property of Samuel Chatwin.

Second. Subjecting this property to a mortgage for $4,000 in favor of Sidney Cook, and also for charges for paving.

Third. Declaring this property to be covered by a judicial mortgage in favor of petitioner, L. D. Hudson, for $6,500, with interest and attorney's fees, less a credit of $4,000, paid October 20, 1928.

Fourth. Ranking the mortgage in favor of Sidney Cook and the charges for paving ahead of the judicial mortgage of L. D. Hudson, petitioner.

Fifth. And declaring the judicial mortgage of L. D. Hudson, petitioner, superior in rank to any mortgage that might hereafter be placed on the property by the defendants John E. Murray or Samuel Chatwin.

In paragraph 8 of the petition it is alleged that: "Your petitioner shows an agreement by and between John E. Murray and Samuel Chatwin, by virtue of which John E. Murray agreed to buy the above mentioned note for $15,000, interest and attorney's fees, from the City Savings Bank & Trust Company for the price and sum of $12,000, and thereafter to sue on said note and mortgage, to the end and for the purpose of purchasing at sheriff's sale the property mortgaged to secure the said note for $15,000, interest and attorney's

fees, all of which was done and performed by the said John E. Murray."

Petitioner has alleged, not only an agreement between Murray and Chatwin that Murray should buy the note for $15,000 from the bank, foreclose the mortgage, and buy in the property, but that Murray actually did so.

However, petitioner in his answer to the appeal. has set forth "that the said note ($15,-000 note) was paid by John E. Murray."

█ Petitioner is bound by the allegations contained in his original petition that Murray "bought" the note, and cannot be permitted to change such allegations in his answer to the appeal by stating that Murray "paid" the note.

Had Murray "paid" the note of $15,000, held as collateral for the indebtedness of $13,000 due by Chatwin to the bank, it is clear that the mortgage on the property would have been extinguished, and the foreclosure proceedings and sale thereafter to Murray would have been a pure sham and rank simulation.

█ Not only does petitioner allege that Murray bought the collateral note for $15,000, but the uncontradicted testimony of Murray, Chatwin, and George N. Richardson, president of the City Savings Bank & Trust Company, shows that the bank sold this note outright to Murray, who paid $12,000 for it, as a compromise with the bank.

The collateral note for $15,000 was purchased by Murray from the bank, and the mortgage foreclosed by him, with the full consent of Chatwin, the original owner of the note.

No attack is made by petitioner upon the indebtedness due by Chatwin to the bank, nor upon the collateral note for $15,000, nor upon the mortgage executed by Chatwin on these lots securing this note.

The indebtedness of Chatwin to the bank actually existed. The collateral note for $15,000, held by the bank, was genuine and unpaid. The mortgage placed on these lots by Chatwin to secure this note was bona fide and valid. Murray purchased the collateral note for $15,000 for a valuable consideration, and paid $1,000 for the property adjudicated to him at the sheriff's sale.

Manifestly, no element of simulation entered into any of these transactions, and Murray, as the owner of a valid, subsisting first mortgage note, unquestionably obtained a good title to the lots purchased by him at the foreclosure sale.

The allegation made by petitioner that Murray had agreed to transfer to Chatwin, for "no additional consideration," lots 1, 2, and 3 of block 22 of the J. N. Howell subdivision, is not borne out by the evidence in the case, which shows, indisputably, that the transfer of these lots was to be made by Murray only after an $8,000 mortgage had been placed upon them, and had been assumed.

The allegation that Murray conspired with Chatwin to purchase at sheriff's sale for $25,000 property which is alleged to be not worth $24,000 in order to place it beyond the reach of Chatwin's creditors would not only make Murray the loser to the extent of $1,000, but is wholly unsupported by the evidence.

Murray desired to buy from Chatwin parts of lots 9, 10, and 11, not previously sold to the Standard Oil Company, of block 22 in the J. N. Howell subdivision. He knew that Chatwin could not transfer to him an unincumbered title. The City Savings Bank & Trust Company was a mortgage creditor. Murray therefore purchased from the bank the collateral mortgage note held by it as security for the debt due the bank by Chatwin, foreclosed the mortgage, and bought in the property.

Chatwin agreed that the bank sell the $15,000 mortgage note to Murray, and that he should foreclose, with the hope of getting an equity out of the transaction.

When Murray purchased this property at sheriff's sale, he obtained a good and valid title, free from all incumbrances and had a right to give to Chatwin an equity in lots 1, 2, and 3, block 22, Howell subdivision, if he saw fit. If there be such equity in this property, over and above the $8,000 mortgage to be placed upon same, petitioner may seize the property under his judgment and sell same, and thereby obtain the benefit, after the transfer is made. In our opinion, however, the present action on the part of the petitioner is not justified by the law and the facts of the case.

It is therefore ordered that the judgment appealed from be annulled and reversed.

It is now ordered that petitioner's demands be rejected, and that petitioner's suit be dismissed, at his cost.

ST. PAUL, J., dissents.